IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

PERCY C. WILSON AND
PHYLLIS C. WILSON                                       PLAINTIFFS

VERSUS                         CIVIL ACTION NO. 5:05cv122-DCB-JMR

AMERIQUEST MORTGAGE COMPANY                             DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Ameriquest Mortgage
Company's Motion for Summary Judgment [**docket entry no. 40**].
Having reviewed the motions, briefs, applicable statutory and case
law and being otherwise fully advised as to the premises, the Court
finds as follows:

### FACTS AND PROCEDURAL HISTORY

On August 17, 1992, Percy and Phyllis Wilson purchased a house
located at 105 Tipton Lane, Vicksburg, Mississippi and obtained
financing from Washington Mutual. (Mem. Opp. Summ. J. 1.)  In
February of 2003, Washington Mutual began foreclosure proceedings
against the Wilsons because the plaintiffs' failed to make their
monthly mortgage payments for the preceding several months. (See
Mot. Summ. J. Ex. F.)  On March 3, 2003, the plaintiffs declared
Chapter 13 bankruptcy, but their petition was dismissed on April 4,
2003.  (Mot. Summ. J. Ex. I.)  Once again, Washington Mutual
initiated foreclosure proceedings, proper notice was given and
published, and the foreclosure sale was set for May 7, 2003. (Mot.

Summ. J. Ex. K.)

In April of 2003, the Wilsons contacted Ameriquest Mortgage Company in hopes of obtaining a mortgage to pay off their remaining loan balance owed to Washington Mutual. (Mem. Opp. Summ. J. 2.)  On April 28, 2003, the plaintiffs received a payoff letter from Washington Mutual stating that their current mortgage balance was $74,561.68.  (See Mot. Summ. J. Ex. A, Wilson dep. 29-30 and Ex. N.)  On May 5, 2003, the Wilsons received a second payoff letter stating that the current amount owed had increased to $78,086.92. (See Mot. Summ. J. Ex. A, Wilson dep. 51 and Ex. O.)  On May 7, 2003, the plaintiffs received a letter stating that the Tipton Lane house was sold to Fleet National Bank, a subsidiary of Washington Mutual, at a foreclosure sale for $78,086.92.  (See Mot. Summ. J. Ex. A, Wilson dep. 52-54 and Ex. U.)  The letter further ordered them to vacate the premises within ten days.

On May 13, 2003, six days after Plaintiffs' house was sold at the foreclosure sale, the Wilsons and Ameriquest closed a loan for $78,000. (Mot. Summ. J. Ex. O.)  The HUD-1 directed $74,561.68 to be paid to Washington Mutual while the remaining amount represented the plaintiffs' closing costs.  When the closing agent, Elite Title, attempted to pay Washington Mutual, the $74,561.68 was refused since Washington Mutual was owed $78,086.92 on the plaintiffs' mortgage.  After Washington Mutual's rejection of the attempted tender, the Wilsons were informed by Ameriquest that

Ameriquest would not increase the loan amount beyond the $78,000.00 requested in the loan application and listed on the HUD-1.  (Mot. Summ. J. Ex. A, Wilson dep. 63-64, 69-70.)

This action was filed by the Wilsons on May 20, 2005 against Ameriquest in the Circuit Court of Warren County, Mississippi seeking $350,000.00 in damages.  These damages were based on Ameriquest's alleged negligence, breach of fiduciary duties, and breach of the implied covenants of good faith and fair dealing. (Compl. ¶¶ 2-6.)  The action was removed on the basis of diversity jurisdiction on July 15, 2005.  With all discovery completed, Ameriquest brought this Motion for Summary Judgment on May 15, 2006.

## DISCUSSION

### I.  Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v.</u>

<u>Catrett,</u> 477 U.S. 317, 322-23 (1986).[1]

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. <u>Conkling v. Turner,</u> 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Krim v. BancTexas Group, Inc.,</u> 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." <u>Anderson,</u> 477 U.S. at 250.  "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  <u>Id</u>. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. <u>Celotex,</u> 477 U.S. at 322.

---

[1]A contested fact is "material" when it has the potential to change the outcome of the case.  <u>Ginsburg 1985 Real Estate P'ship v. Cadle Co.,</u> 39 F.3d 528, 531 (5th Cir. 1994) (quoting <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  <u>Id</u>.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law.  When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment.  Anderson, 477 U.S. at 255.  The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence,  . . . since it is the province of the jury to assess the probative value of the evidence."  Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).  By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  Ameriquest is Entitled to Summary Judgment on the Wilsons' Breach of Fiduciary Duties Claim

The Wilsons allege that they had a fiduciary relationship with Ameriquest and that Ameriquest breached its fiduciary duty owed to them.  (Compl. ¶ 3.)  As a general rule, "a mortgagee-mortgagor relationship is not a fiduciary one as a matter of law."  Hopewell

Enter. Inc. v. Trustmark Nat'l Bank, 680 So. 2d 812, 816 (Miss. 1996); see also Burgess v. Bankplus, 830 So. 2d 1223, 1227-28 (Miss. 2002) ("[An] arms length business transaction involving a normal debtor-creditor relationship does not establish a fiduciary relationship."). Fiduciary duties may arise, however, "where there appears 'on the one side an overmastering influence or, on the other, weakness, dependence, or trust [that is] justifiably reposed.'" Lowery v. Guar. Bank & Trust Co., 592 So. 2d 79, 83 (Miss. 1991) (quoting Miner v. Bertasi, 530 So. 2d 168, 170 (Miss. 1988). Mississippi law recognizes a fiduciary relationship only when four factors are met:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both;
>
> (2) the parties have a common interest and profit from the activities of the other;
>
> (3) the parties repose trust in one another; and
>
> (4) one party has dominion and control over the other.

Ward v. Life Inv. Ins. Co. of Am., 383 F. Supp. 2d 882, 887 (S.D. Miss. 2005) (quoting Hopewell Enter., Inc., 680 F. Supp. 2d at 816).

In the case sub judice, the Wilsons have pointed to no facts showing that the transaction with Ameriquest was anything more than a typical arm's length mortgage transaction. Plaintiffs claim that "all parties profit from the activities of the other" because "Plaintiffs [would] have their delinquent mortgage paid and Defendant [would] benefit from the interest and fees from a loan."

(Mem. Opp. Summ. J. 3-4.)  If Plaintiffs' claims of "mutual profit" create a fiduciary relationship, all commercial transactions would give rise to a fiduciary relationship.  As the Mississippi Supreme Court noted in AmSouth Bank v. Gupta, the fact that both parties hope to profit "is a feature common to every free-market transaction."  838 So. 2d 205, 216 (Miss. 2002) (refusing to find fiduciary relationship between bank and borrower where there was no prior "history of dealings" between bank and borrower).

Moreover, the plaintiffs here were not dominated and controlled by Ameriquest.  The Wilsons are both sophisticated people.  At the time this cause of action arose, Mr. Wilson was the manager of a mortgage company and was familiar with the intricacies of the mortgage process.[2]  Mrs. Wilson held a Master's Degree in education and counseling.  The mere fact that Ameriquest "prepared all [the] documents that were signed" does not mean that it dominated and oppressed the Wilsons.  Similarly, without some special and unique dealings between the parties, it cannot be said that Ameriquest had an "overmastering influence" over the Wilsons or that the Wilsons were weak and dependent.  See Lowery, 592 So. 2d at 85 (finding fiduciary relationship to exist where there were "special dealings" between bank and borrower); see also AmSouth Bank, 838 So. 2d at 217.

---

[2]Before managing the mortgage company, Mr. Wilson was employed as a civil engineer for the U.S. Army Corp of Engineers in Vicksburg, Mississippi for twenty-two years.

Since the plaintiffs failed to provide any evidence indicating the existence of a fiduciary relationship, summary judgment must be granted for the defendant on the plaintiffs' breach of fiduciary duties claim. See Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994) (holding that nonmoving party must show "significant probative evidence" that a genuine issue of material fact exists).

## III. Ameriquest is Entitled to Summary Judgment on the Wilsons' Negligence Claim

The Wilsons allege that Ameriquest "negligently mishandled plaintiffs' loan . . . proximately causing the commencement of eviction proceedings against plaintiffs." (Compl. ¶ 2.) Plaintiffs further allege that Ameriquest "had a duty to exercise that degree of care which a reasonably prudent bank/lending organization would have exercised under the same or similar circumstances." (Compl. ¶ 6.) To establish a claim for negligence, the plaintiffs must prove (1) that Ameriquest owed a duty to the plaintiffs, (2) Ameriquest breached that duty, (3) causation, and (4) damages. Nicolas v. Dep. Guar. Nat'l Bank, 182 F.R.D. 226, 234 (S.D. Miss. 1998). See also Peoples Bank & Trust Co. v. Cermack, 658 So. 2d 1352, 1360 (Miss. 1995) (overruled on other grounds) (stating elements required to establish negligence and holding that bank had no duty to not accelerate plaintiff's

loan).

A lending institution has an obligation to disburse the amount of money it committed to lend in the mortgage agreement. See Cahaba Seafood, Inc. v. Central Bank of the South, 567 So. 2d 1304, 1306 (Ala. 1990) (holding that bank did not have duty to lend more money than the amount required in the loan agreement). See also Resolution Trust Co. v. BVS Development, Inc., 42 F.3d 1206, 1214 (9th Cir. 1994) (stating that lenders' duties are delineated in lending agreement). Here, the loan agreement called for Ameriquest to tender $74,561.68 to Washington Mutual. Ameriquest fulfilled this obligation by transferring that amount of money to the closing agent, Elite Title, with instructions to forward the funds to Washington Mutual. At that time, Ameriquest's duty was fully completed. It is legally insignificant, with regards to Ameriquest, that Washington Mutual refused the tender. Moreover, the Wilsons can point to no contractual language requiring Ameriquest to disburse funds in excess of the loan agreement's stated amount.

Plaintiffs claim that "Defendant was obligated to make sure the closing document figures were accurate, including the payoff of the loan to Washington Mutual. The letter stating the payoff amount from Washington Mutual stated that they were to contact the attorney for Washington Mutual to get a correct figure." (Mem. Opp. Summ. J. 6.) This argument fails for two reasons. First, the

letters from Washington Mutual stating the payoff amount **were addressed, received, and read by the Wilsons; <u>not</u> Ameriquest**. Second, the plaintiffs have failed to show any express provision in the loan agreement that required Ameriquest to take affirmative steps to contact Washington Mutual for the current loan payoff. Plaintiffs had the burden of listing on their loan application the desired loan amount.  Without some express contractual language to the contrary, this burden cannot be shifted to Ameriquest.

Since the Wilsons have failed to articulate a duty owed to them by Ameriquest that was breached, the defendant is entitled to summary judgment on the plaintiffs' negligence claim.


**IV.  Ameriquest is Entitled to Summary Judgment on the Wilsons'
Breach of the Implied Covenants of Good Faith and Fair Dealing
Claim**

Under Mississippi law, every contract implicitly contains the implied covenants of good faith and fair dealing in the contract's performance.  <u>Ferrara v. Walters</u>, 919 So. 2d 876, 883 (Miss. 2005); <u>Cenac v. Murry</u>, 609 So. 2d 1257, 1272 (Miss. 1992).  "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." <u>Cenac</u>, 609 So. 2d at 1272, <u>quoted in</u> <u>Univ. S. Miss. v. Williams</u>, 891 So. 2d 160, 170 (Miss. 2004).  To establish "bad faith," the plaintiffs must prove more than mere negligence or bad judgment; rather, "bad

faith" requires a showing of some conscious wrongdoing on the part of the defendant caused by "dishonest purpose or moral obliquity." Williams, 891 So. 2d at 170-71.  Generally, as a matter of law, when a party acts in accordance with the express terms of a contract, the implied covenants of good faith and fair dealing have not been violated.  Baldwin v. Laurel Ford Lincoln-Mercury, Inc., 32 F. Supp. 2d 894, 898 (S.D. Miss. 1998).  The plaintiffs have the "burden in coming forward with sufficient evidence to show that genuine issues of material fact are in dispute as to [their] claim that [the defendant] breached a duty of good faith and fair dealing."  Braidfoot v. William Carey Coll., 793 So. 2d 642, 652 (Miss. Ct. App. 2000) (affirming grant of summary judgment since nothing in record indicated that defendant breached contract or acted in bad faith).

Plaintiffs allege that Ameriquest breached the implied covenants of good faith and fair dealing by not "mak[ing] sure the [payoff] figures were accurate and prepar[ing] the closing documents accordingly."  (Mem. Opp. Summ. J. 7.)  As previously mentioned, the plaintiffs have not pointed to any express provision in the loan agreement that required Ameriquest to check the accuracy of the payoff figures supplied to them by the plaintiffs. The Court fails to see how Ameriquest acted in bad faith and with "moral obliquity" when it had no obligation under the contract to verify the plaintiffs' Washington Mutual loan balance.  Ameriquest

fully complied with its contractual duties; therefore, it did not act in bad faith.  See Baldwin, 32 F. Supp. 2d at 899 ("The defendants were not required to do more than the contract required to escape liability for breach of the covenants of good faith and fair dealing.").

Moreover, the Wilsons breached the loan agreement themselves by offering as collateral a house they did not own.  The loan agreement states, "BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record."  Mr. Wilson made this covenant and pledged the Tipton Lane house as collateral **after** he knew that the house was sold at a foreclosure sale.  (Wilson Dep. 52-53.)  The Plaintiffs willfully breached the loan agreement by covenanting that they owned the Tipton Lane house when in fact they knew it was owned by Fleet National. "Under Mississippi law, a material breach by either party terminates a contract." Estate of Reaves v. Owen, 744 So. 2d 799, 802 (Miss. Ct. App. 1999) (cited in 17A Am. Jur. 2d Contracts § 685 (2006)).  Since the contract was terminated by the Wilsons' material breach, there was no longer an enforceable contract between the Wilsons and Ameriquest.  See Ferrara v. Walters, 919 So. 2d 876, 886 (Miss. 2005).  Accordingly, Ameriquest did not breach the covenants of good faith and fair dealing.

**CONCLUSION**

-12-

The Wilsons failed to establish the existence of a fiduciary duty between themselves and Ameriquest; therefore, their breach of fiduciary duties claim must fail.  Ameriquest is also entitled to summary judgment on the plaintiffs' negligence claim because the plaintiffs failed to articulate a specific duty that was breached by Ameriquest.  Finally, since the Wilsons failed to show that Ameriquest acted in bad faith, summary judgment should be granted to Ameriquest on the Wilsons' breach of the implied covenants of good faith and fair dealing claim.  Accordingly,

IT IS HEREBY ORDERED that the defendant's Motion for Summary Judgment [**docket entry no. 40**] is **GRANTED.**


SO ORDERED, this the 8th day of September, 2006.


S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE

-13-